UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LUCAS BRUNO, III, ET AL., Plaintiff, v. ROBERT “BOBBY” AU, ET AL., Defendants. | Case No. CV03-00567JMS-BMK<br>Honolulu, Hawaii<br>January 12, 2007<br>9:08 a.m. |

TRANSCRIPT OF PLAINTIFF GAHR’S MOTION FOR CONTINUANCE AND PLAINTIFF BRUNO’S STATUS CONFERENCE REGARDING SETTLEMENT
BEFORE THE HONORABLE BARRY M. KURREN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs: MICHAEL GREEN, ESQ.
DENISE HEVICON, ESQ.
345 Queen Street, 2nd Floor
Honolulu, Hawaii 96813

Plaintiff Pro se: CHRISTOPHER GAHR
700 East Washington, #81
Colton, California 92324

For the Defendants: U.S. ATTORNEY’S OFFICE
By: THOMAS HELPER, ESQ.
300 Ala Moana Boulevard, #6100
Honolulu, Hawaii 96813

Transcriber: Jessica B. Cahill
P.O. Box 1652
Wailuku, Maui, Hawaii 96793
Telephone: (808)244-0776

Proceedings recorded by electronic sound recording, transcript produced by transcription service

THE CLERK: Civil number 03-00567JMS-BMK, Lucas Bruno versus Robert Au, et al. This hearing has been called for Christopher Gahr's motion for continuance and a further final pretrial conference. You may make your appearances.

MR. HELPER: Good morning, your Honor, Thomas A. Helper on behalf of the defendants.

THE COURT: Good morning.

MS. HEVICON: Good morning, your Honor, Denise Hevicon and Michael Green on behalf of plaintiffs Thomas Young, Lucas Bruno, and Charles Turner.

THE COURT: Okay. And, Mr. Gahr, are you on the phone?

MR. GAHR: Yes, I am, sir.

THE COURT: Okay. Good morning.

MR. GAHR: Good morning.

THE COURT: Mr. Gahr, I have received your motion. I've had an opportunity to review it as well as the Government's memorandum in opposition. Is there anything that you would like to say further in support of your motion?

MR. GAHR: Yes, I would. And I'd like to make reference to Mr. Helper's statements. I wasn't aware that there were four standards which have to be met, and I'd like to -- the first standard, Gahr has not been diligent.

Well, I don't think that that is for Mr. -- Mr. Helper to decide. He's not in California. He's not trying to find an

attorney in Hawaii. And as one attorney I spoke with described it, sitting down with this case is the equivalent of walking into a Denny's and sitting down at somebody else's half eaten meal and beginning to eat half a hamburger that somebody else has already left as a remnant.

THE COURT: Well, here's the problem, Mr. Gahr. You know, on so many occasions you -- you -- you advised us that you -- you were making arrangements with an attorney.

MR. GAHR: Yes.

THE COURT: I -- I never -- I never heard from you at any point over the course of this case when you were no longer represented by Mr. Green that you were having any difficulty whatsoever in obtaining counsel.

MR. GAHR: Well, I -- and I apologize for that. It's not something I thought I should -- I should bother the Court with. I mean that's my problem not the Court's problem. That was how I viewed it.

The second issue brought up by Mr. Helper; Gahr failed to show that a continuance would resolve his problems. You know, in the short amount of time that I was given in finding an attorney, you know, I -- I didn't realize in advance it was going to be more difficult to find an attorney to take over a half litigated case. You know, I -- I -- I would have thought that the Court, having experience in this, would have given me some guidance on this. Maybe pushed off the trial for about a

year. But, you know, that's -- you know, that -- that's the problem that I'm facing. It's the problem of finding an attorney to take over a half litigated case.

The next issue, continuance would cause significant prejudice to the Court, the witness, and the defendant. You know, I -- I think that Mr. Helper -- let's see. Yeah, he's -- he's so certain -- he's so certain of his victory anyway that he's unwilling to settle the case. You know, I think it would only be fair to allow the defendant, you know, the -- the opportunity to clear his reputation in a fair trial.

But court cases change all of the time. I mean a court case can change all of the time. In fact, you know, Mr. Green was given a continuance of two years so that he could take on another case --

THE COURT: You know, Mr. Gahr -- Mr. Gahr --

MR. GAHR: -- yes.

THE COURT: -- this is one of the oldest cases on the Court docket. Do you realize that?

MR. GAHR: Yes, but, you know, it -- it has -- it has been pushed off. It was pushed off for, I believe, two years so that Mr. Green could litigate another case. But simply being old doesn't -- it doesn't make that a reason for -- for dropping the -- for forcing me into a position where I have no competent attorney.

You know, the obligation of the Court, I think, is to

-- the obligation of the Court is to find justice not to clear its docket.

THE COURT: Okay. Anything else, Mr. Gahr?

MR. GAHR: Let’s see, last -- number B, Gahr would not be significantly prejudiced by going to trial as scheduled. You know, I don’t even want to -- I don’t want to embarrass the Court for having to explain this but, you know, nine months is going to make an incredible difference for me. It is not going to make a difference for -- for the defendant. The defendant has unlimited resources and unlimited experience. Mr. -- Mr. Helper has a law degree, he did an internship, and he’s got maybe 15 years as an attorney.

I don’t have that. I don’t have the finances that Government has. I don’t have the experience. Right now I don’t even have an -- an attorney. You know, I -- I would hate that we would go to Court and, you know, I -- I feel it would -- I feel it would embarrass the Court for me to go in there and have to try and litigate this case, try to try this case on my own.

THE COURT: You know, Mr. Gahr, can I ask you a question?

MR. GAHR: Yes.

THE COURT: At a prior conference, off the record, I -- I was made aware of the fact that you had not requested any of the files from Mr. Green’s office; is that -- is that correct?

MR. GAHR: No, that's not correct. I did request the files.

THE COURT: When did you do that?

MR. GAHR: Immediately after the status conference. I'm sorry, not immediately, I would say, you know, a day -- the following day. The day following the status conference.

MR. GREEN: What status conference is he referring to?

THE COURT: Yeah, that's -- that's a good point.

MR. GAHR: Oh, I'm sorry, I didn't --

THE COURT: What status conference are you referring to?

MR. GAHR: The conference in which Mr. Green dropped me as his client.

MS. HEVICON: Your Honor, if I may speak to that? In one sense that is true. Mr. Gahr --

MR. GREEN: Say who you are.

MS. HEVICON: -- oh, this is Denise Hevicon.

MR. GAHR: I'm sorry I can't hear you.

MS. HEVICON: This is Denise Hevicon speaking.

MR. GAHR: Yes.

MS. HEVICON: In fact, in one -- in one sense that is true. Initially at the time before the hearing on -- on our motion to withdraw, when we had filed our motion Mr. Gahr had sent an email saying he wanted his files.

THE COURT: Uh-huh.

MS. HEVICON: Then I have a phone message, and I looked -- actually had looked through the files yesterday and the correspondence, and there was a message that said from him, never mind I'm coming into town. And, in fact, he did come into town.

THE COURT: Uh-huh.

MS. HEVICON: And he came to our office.

THE COURT: Uh-huh.

MS. HEVICON: And at that time we said, you can copy whatever you want. You know, we'll take it down to New Tech, you can pay for it. At that time Mr. Gahr said, he wanted two transcripts which he did receive at that time. And then he said I'm getting an attorney, and I think back then it was supposed to be Mike Lilly --

THE COURT: Uh-huh. Right. Right.

MS. HEVICON: -- was the name I heard thrown around, and he said I'll have my lawyer contact you. That was the last time that we spoke to Mr. Gahr about his file.

This week, and I have a copy of the email, your Honor, Mr. Gahr sent us -- sent me an email saying I would like to have my file. I said, fine. So, we took it, we copied it, and we got it out on DHL yesterday.

THE COURT: Okay. Are those facts correct, Mr. Gahr?

MR. GAHR: I -- I say no, not completely. I -- I was told I couldn't have a lot of the files, because they belonged

not to me but to the case, and therefore they were needed for the case.

Now -- yeah, I know we're going to get into a big argument about this. So, let's go ahead and clear a couple hours because, you know, I'm willing to argue it.

MS. HEVICON: Your Honor, I would like to respond briefly, and I don't think it's going to take a couple hours. The -- they do belong to the case. They shouldn't be turned over to Mr. Gahr, but they were available --

THE COURT: Because you were willing to make --

MS. HEVICON: -- for copying.

THE COURT: -- right. Right.

MS. HEVICON: That is correct. And at that time we were discussing settlement with the other plaintiffs. We were not preparing for trial. But -- but we could not give away the -- the file.

THE COURT: Okay.

MS. HEVICON: But -- but he -- he came into the office. The whole file was put into a room for him. I said whatever you want you can have. We'll send it down and copy it. He chose not to do that at that time and said his attorney would contact me.

And, your Honor, as you know when somebody is represented or there is knowledge on our part that somebody is represented by counsel, as there have been representations by

Mr. Gahr made that he was so -- that he did have an attorney, ethically I can't contact him now, because we're in an adversarial position.

THE COURT: Right.

MS. HEVICON: I waited for him to contact me, and he did this week, and the files were sent out yesterday.

THE COURT: Okay. Mr. Gahr, is there anything --

MR. GAHR: Well, how -- how did we get into an adversarial position?

THE COURT: Excuse me?

MR. GAHR: I -- I don't -- I missed that. How -- how is it that we became in an --

THE COURT: Okay. You know, Mr. Gahr --

MR. GAHR: -- adversarial position?

THE COURT: -- Mr. Gahr --

MR. GAHR: Yes.

THE COURT: -- is there anything additionally you wish to say in support of your motion?

MR. GAHR: Yes. Listen, if -- are -- are you able to hear me correctly, because I -- I'm having a hard time hearing what's going on in there?

THE COURT: No, I can hear you fine.

MR. GAHR: Okay. The only thing, you know, I -- I can further say is that -- is -- if -- if I'm forced to -- to be -- to be my own attorney, you know, I'm going to have to object to

everything during trial that Mr. Helper says and every witness says. And -- and I hope that the Court understands that I don't know what I'm doing. So, I'm just going to object to everything, and this is going to make the process miserable. And, you know, I apologize for that in advance, but I don't have any other recourse.

THE COURT: Okay. Okay. Mr. Helper.

MR. HELPER: Your Honor, I don't think -- essentially I'm going to rest on my brief, your Honor. I -- I don't think that there's anything -- anything new in the record here to support a motion for a continuance. I think, in fact, what transpired today supports denial of the motion.

The only thing I point out is I don't think there's anything in the record to support the assertion that prior continuances were granted for Mr. Green to prepare for some other trial. I think the Court record is clear as to the grounds for those other continuances.

THE COURT: Okay. Mr. Gahr, let me start out by saying this. I try as best I can at all times during a case to -- to make sure that the playing field is absolutely fair for everyone in a case. And there's nothing that is more disappointing to me, or certainly unfortunate than to see a -- a situation develop in which -- in a civil case such as this someone doesn't have an attorney, and -- and may be forced to then make a decision about how to proceed with a -- with a case.

You know, I certainly make no comment on the circumstances that led to the difference of opinion between you and Mr. Green's office. You know, at one time I thought we had an overall settlement and apparently we did not.

So -- so, you know, all the way back in July -- this is all the way back in July, more than -- more than six months ago, you know, it -- we understood that you were going to go your separate way.

And -- and you may recall, you know, back at that time when -- when it became apparent that you would not be parti -- participating in the settlement, you know, I in very strong words urged you to immediately make an effort to find an attorney. You agreed. You said you would be doing so.

I also advised you what -- what the -- you know, that -- that now you were on your own, and you wanted to be on your own at that point. You -- you -- you didn't want to have Mr. Green further represent you in this case. I -- I made it very clear, you know, all the way back then what the pitfalls would be of representing yourself.

I took the case off calendar not -- not very long thereafter, because I knew that we would require some additional time to -- to, one, allow you to get an attorney to -- to try to prepare appropriately for trial. And -- and we had several status conferences thereafter where -- you know, in which I -- I -- I -- I -- I brought up the -- the -- the -- the problem that

we were having by not having an attorney appear on your behalf.

You said repeatedly at these conferences that you were talking with counsel, that you were making arrangements. You did mention Mr. Lilly at one point. You said counsel would be -- would be reviewing the files. I wanted to make sure there was ample time for you and a possible new attorney to come on board to -- to handle this case. So, we took it off calendar. We moved the case.

Then, you know, back in November I -- I -- I told the parties that we were at a point where we needed to get this case on track. I set the case for trial in February. You did not object. You said you would be able to have counsel on board by that time. With everybody's agreement the case was once again continued, and -- and I made it very clear that this would be a firm date. This is an old case. You know, there -- there is only so much the Court can do to -- to -- to accommodate parties in -- in taking the steps necessary to prepare the case for trial.

I wanted to make sure we had every -- every opportunity to -- to have this case prepared in a way that -- that -- that no party would suffer any prejudice. But I made it clear, you know, during this period of time on numerous -- at numerous times, Mr. Gahr, that -- you know, that the Court could only extend this case, you know, so many times before we had to make the decisions necessary and take the steps necessary to

prepare this case for trial.

But in November I made it clear that the Court really had no option at that time, but -- but to -- but to set a date after this case had been continued on numerous occasions, a date that we all had to shoot for. And it wasn't until all the way at the final pretrial conference in January that you indicated that -- that you wanted more time.

I'm sorry, Mr. Gahr, that's too little too late. And it -- it's clear to me that -- that -- that you really haven't taken the steps necessary to advance this case appropriately.

I -- I'm persuaded that you had an opportunity to have your files copied early on. You didn't avail yourself of that opportunity. That at -- at no point during this time when we are -- are trying to find a solution, find a time for setting this case for trial was I made aware of any difficulty. Not until just shortly before the trial date was I told by you that -- that you couldn't find an attorney. And at this -- at this point you wanted additional time to -- to find a lawyer.

I think I've given you every opportunity, every reasonably opportunity, Mr. Gahr, to -- to take the steps, to take the measures necessary to appropriately respond to this case. It is not something that I -- I -- I -- I, you know, would want for this case. But -- but I think really we are -- we have no option at -- at this point but to proceed forward on the schedule that has been established.

So, for all of the reasons that I think Mr. Helper has appropriately identified in his memorandum in opposition to the motion I'm compelled, Mr. Gahr, to deny your motion to continue the trial. And unfortunately this case, at this point, has to proceed to trial on February 13 as scheduled. And -- and that's -- that is what will occur.

So, Mr. Helper, if you would prepare an order denying the motion to continue the trial date. The case will proceed as scheduled.

MR. HELPER: Yes, your Honor.

THE COURT: Okay. Well, Mr. Gahr, there are deadlines that are set forth in the final pretrial -- in the order -- the scheduling orders that have been established. You know, you're going to have to meet all of those deadlines. I know you haven't --

MR. GAHR: Well, would the -- would the Court be kind enough to at least let me know when those deadlines are? I -- I was caught completely off guard by the January 5th -- you know, no one had informed me about the January 5th pretrial conference.

THE COURT: Okay. Well, we've issued scheduling orders in this case. I'm going to have the courtroom manager, you know, provide you -- is there -- do you have a fax number?

MR. GAHR: No, I don't. It -- it can be sent to me by email.

THE COURT: Okay. We have -- I understand we have email. We're going to email you all of the remaining trial related deadlines.

MR. GAHR: Okay.

MR. HELPER: Your Honor, I do want to point out here that the original date for the final pretrial was January 2nd, and that was clearly -- I -- I think there have been some problems with --

THE COURT: It was the continuance from January 2nd to January 5 that I certainly can understand perhaps that information didn't -- didn't get to you, Mr. Gahr, but --

MR. HELPER: -- right. But -- but, your Honor --

THE COURT: -- I mean Mr. -- Mr. Helper's correct. The January 2nd final pretrial conference date was set, you know, quite a long time ago, and -- and I think during a conference that I participated in.

MR. HELPER: -- and, your Honor, if I could just make a request here that -- I think that at the November 13th setting conference Mr. Gahr was orally informed of the January 2nd final pretrial conference.

THE COURT: That's -- I understand that.

MR. HELPER: And of the --

MR. GAHR: It was not the January 2nd that was the issue. It was the January 5th --

THE COURT: I understand that.

MR. GAHR: -- that was continued.

THE COURT: Right.

MR. HELPER: -- and as far -- and Mr. Gahr, did not -- I believe he was also informed of the obligation to file a final pretrial statement --

THE COURT: Right.

MR. HELPER: -- and he did not do so. As far as I'm aware he made no attempts to contact the Court on January 2nd, and therefore never learned of the continuance to January 5th.

Based on this, your Honor, I'd ask that the Court instruct Mr. Gahr that further failures to obey the Court's schedule and file documents as required by that schedule could result in sanctions up to and including dismissal.

THE COURT: Well, I think that is correct, Mr. Gahr, and I'm going to leave it at this point to Judge Seabright to decide what, if anything, further will be done for any violations of the trial related deadlines, because we're -- we're -- we're right up on the verge of trial. And, you know, I'm -- I'm going to give you yet one last opportunity on the final pretrial conference statement, because I don't believe you filed one today.

MR. GAHR: I did file one.

THE COURT: Oh, you did file one. Oh, okay. Okay.

MR. GAHR: I filed that on the tenth.

THE COURT: Oh, you know, and I have it right here in

front of me. I'm sorry, Mr. Gahr. Okay. Very -- very well. Well, my courtroom manager will email you the trial related deadlines. I will ask that you follow those deadlines.

MR. GAHR: All right.

THE COURT: And as I indicated the case will proceed to trial on February 13th.

MR. GAHR: Okay.

MR. HELPER: And, your Honor, it's not clear to me, or I'm not sure if the record is clear that -- whether or not you are cautioning him that failure to observe the deadlines might result in sanctions.

THE COURT: Well, I -- I -- absolutely. I -- I think that is certainly must -- has to be understood here, Mr. Gahr.

MR. GAHR: Okay.

THE COURT: Okay. So, you know, at this point --

MR. GAHR: Your Honor, I would like to indicate one thing.

THE COURT: -- what -- what is that?

MR. GAHR: That TSA has failed in every case to meet its deadline. And -- and -- you know, with -- with the EEOC investigation, with Freedom of Information Act with my pay which I'm still -- I mean there's no -- there's no dispute that they owe me the money because, you know, the paperwork that they sent me shows that they owe the money.

THE COURT: Well, look -- look, Mr. Gahr --

MR. GAHR: I don't understand why you are so adamant about making sure that I meet the deadlines when you don't require the TSA to meet the deadlines.

THE COURT: Well, I don't believe that is correct as far as this lawsuit is concerned. I'm not aware of any deadline the Government has -- has -- has failed to meet in connection with this lawsuit. Can you point me to anything that they've failed to do in the lawsuit?

MR. GAHR: Well, I view -- I view Freedom of Information Act as part of the lawsuit.

THE COURT: Well, it is not.

MR. GAHR: That -- that is how I was trying to get the information for this -- you know, there's evidence that they simply refused to give me.

THE COURT: Well, I -- I -- I really would have to say that, you know, I -- I have not been, you know, one-sided about this, Mr. Gahr, as far as the court imposed deadlines are concerned. I -- I think all the leeway has been given to you not -- not -- not to the Government on this.

So, you know, that is why at this point, you know, we've come to the end of the road. The case has to proceed to trial as scheduled. So, you know, at this point this is going to be the end of the conference, the end of the hearing. And I'm just going to ask you, again, to make sure you comply with these deadlines and be prepared for trial on February 13th.

MR. GAHR: Okay.

MR. HELPER: Your Honor, I do want to make sure that -- because the record -- because there is an email going out, but I believe the first deadline is going to be Tuesday where the obligation to exchange exhibits -- I -- I just wanted to do that by email --

THE COURT: Right.

MR. HELPER: -- but I want to make sure Mr. Gahr has my email address.

THE COURT: So, you'll need to cooperate with Mr. Helper on this, and -- and, Mr. Helper, you'll need to -- if you -- you'll have to contact Mr. Gahr directly on the manner in which this information will be exchanged.

MR. HELPER: Yes, sir.

THE COURT: Okay.

MR. GAHR: Okay.

THE COURT: This is the end of the hearing. Okay. We can go off the record. Oh by the way, Richlyn, when you email him I want you -- I meant to say this on the record. You would -- you know, would you advise him that if he wishes to appeal the order that I am entering he -- he has ten days from the date that I enter the order to -- to lodge an appeal --

MR. HELPER: I'll put that in the order.

THE COURT: -- with Judge Seabright. Yeah, actually that would be helpful.

MR. HELPER: Yeah.

THE COURT: Put -- put it in the order too. Yeah, that would be fine.

(At which time the above-entitled proceedings were concluded.)

CERTIFICATE

I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated this ____ day of _________, 200__.

______________________________

Jessica B. Cahill