EDWARD H. KUBO, JR.  2499
United States Attorney
District of Hawaii

THOMAS A. HELPER  5676
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850-6100
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
E-mail: tom.helper@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LUCAS BRUNO III, CHRISTOPHER GAHR, FRANK ROBERT PAULSON, CHARLES TURNER, and TOM YOUNG,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>MICHAEL CHERTOFF, Secretary, DEPARTMENT OF HOMELAND SECURITY,<br><br>                    Defendant. | CIVIL NO. 03-00567 JMS BMK<br><br>DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DESIGNATION OF DEPOSITION TESTIMONY AND COUNTER-DESIGNATION OF DEPOSITION TESTIMONY; ATTACHMENTS "1"-"6"; CERTIFICATE OF SERVICE<br><br>Trial:  April 24, 2007<br>Judge:  J. Michael Seabright |

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DESIGNATION OF DEPOSITION
TESTIMONY, AND COUNTER-DESIGNATION OF DEPOSITION TESTIMONY

Defendant Michael Chertoff hereby objects as follows to

plaintiff's designation of deposition testimony, and also hereby

counter-designates the following portions of the depositions at

issue.  Defendant may seek to amend its designations depending on

the court's rulings on motions in limine and exhibit objections.

Because plaintiff has filed only his list of designations, and

not the underlying transcripts, defendant submits herewith copies
of the transcripts marked with plaintiff's designations (but not
defendant's counter-designations, since those are not now at
issue).  The Filbert Carvalho transcript – the only transcript
containing designations by defendant -- is marked with both
sides' designations.

I.    Lucas Bruno III

      OBJECTIONS

      Page 53, lines 9 to 25

      Page 56, line 22 to page 57, line 5

      This concerns Bruno's initial statement that TSA enforced
dress code and other rules one way for Caucasians and another for
non-Caucasians.  The testimony should be excluded for the reasons
set forth in defendant's Motion in Limine to Exclude Evidence
Regarding Personnel Decisions Other than Plaintiff's Termination

      In addition, the evidence should be excluded under Rule 602
of the Federal Rules of Evidence, which limits a lay witnesses
testimony to matters within his personal knowledge, and Rule 802,
barring hearsay not within any exception.  In the first
designated excerpt, Bruno claims that TSA management enforced
dress code and behavior rules against Caucasian employees but not
against non-Caucasians.  In the second excerpt, and in numerous
portions not designated, however, Bruno makes clear that he has
no personal knowledge of any such thing.  He never saw any

supervisor criticizing a Caucasian employee for a dress code violation. 59:18-20. He never saw any enforcement of the dress code rules at all. 60:22-61:6. He never saw the rule against backpacks enforced against anyone. 63:4-13. He never saw the rule against wearing a TSA uniform off airport grounds enforced against anyone. 63:18-64:5. He heard of such things from others, 56:24, but he couldn't prove it wasn't (in his words) "a myth."

Based on this testimony, it is clear that Bruno has no personal knowledge of any double standard of dress code or deportment violations for Caucasian versus non-Caucasian screeners, and his testimony of such a double standard is based entirely on hearsay. Accordingly, the court should decline to admit that testimony.


Page 67, line 10 to 22

Bruno claims that he spoke to Caucasian screeners who supposedly told him they were trained to wand in one way and non-Caucasians who were taught to screen in another. Plaintiff never followed up with the employees who supposedly made these statements, who might have offered direct knowledge of such a procedure. The testimony is obvious hearsay, offered to prove the truth of the matter asserted. Accordingly, the court should decline to admit it.

Page 74, lines 17 to 25

This scrap of testimony, about a fellow employee named Susan Bos, has no apparent relevance to anything at issue in this case.[1]

Page 77, line 2 to page 78, line 18

This testimony mainly has to do with Bruno's contention that he called a hot line to complain about unspecified concerns, but that no one called him back.  The testimony has no discernible relevance to any matter at issue in this case, and is particularly objectionable because Bruno refers to "the urban legend of what happened to Chris Gahr."  The court should strike the testimony as both irrelevant and as hearsay.

Page 84, line 11 to Page 85, line 85

This testimony is Bruno's defense of a statement in his affidavit trying to refute the argument that he was not discriminated against because he was written up by a Caucasian, Pat Collins.  Bruno compares the situation to the Warsaw Ghetto during World War II when Jewish police punished Jewish people,

---

[1] Here, and throughout this document, defendant's argument that testimony lacks relevance is intended to encompass both Rule 402's ban on entirely irrelevant testimony and Rule 403's bar on testimony whose relevance is substantially outweighed by considerations of unfair prejudice and waste of time.

but it was still discrimination.  This is clearly irrelevant opinion testimony under Rule 701, and inflammatory, and should not be admitted into evidence.

COUNTER-DESIGNATION

If the court rules in defendant's favor on his objections above, virtually nothing is left of Bruno's testimony.  If the court rejects defendant's objections, or if plaintiff chooses to go ahead with what little of Bruno's testimony is unobjectionable, defendant counter-designates the following testimony:

4:10-11

10:19-25

11:10-16, 21-25

14:15-17

15:2-13

55:5-7

II.  Thomas Young

OBJECTIONS

27:8-29:2

73:11-15

76:1-79:11

79:24-83:4

93:2-95:13

These excerpts are relevant to Young's own termination, not to Gahr's, and so are covered by defendant's Motion in Limine to Exclude Evidence Regarding Personnel Decisions Other than Plaintiff's Termination.

45:2-17

This consists of statements by counsel, not testimony.

52:11-20

This excerpt concerns alleged statements by Filbert Carvalho about screening methods. Since Gahr was not terminated for screening improperly, or for anything to do with screening, the testimony is not relevant.

58:12-59:21

118:8-125:13

This testimony concerns Young's perception of differing treatment rendered to Caucasian and non-Caucasian employees at TSA. This is covered by defendant's Motion in Limine to Exclude Evidence Regarding Personnel Decisions Other than Plaintiff's Termination. Because Young's testimony provides a vivid example of the issues raised by that issue, defendant will expand upon that motion here.

Young made six different charges about differential treatment.  He confirmed (at 125:1-13) that this was a complete list of his allegations about differential treatment:

> First – and – and I've got six items on my list.  One the way people were picked to go the gates, two the wau people were picked to go to Lahaina, three, the way people were picked to go to other airports in Tahiti, including Tahiti, four, uniform violations, five, the way promotions were handled, and six, just the way people were counseled or disciplined for their on the job actions.

None of these contentions concerns Gahr at all, much less Gahr's termination.  Indeed, none of them concerns Young directly – he does not say that he ever sought and was denied any of the items on is list.  He provides little in the way of specifics about who was affected.  Plaintiff never attempted to follow up on any of these issues by seeking information about them in written discovery or by questioning TSA decision-makers about them.

Moreover, Young has little basis for many of his charges, and each of these matters would require a minitrial in itself.  To take one example, Young claims that only non-Caucasians were selected to go to work in Tahiti.  In fact, no one went to Tahiti, which is not a U.S. possession.  Screeners were selected to go to American Samoa.  Assuming that this is what Young is referring to, he based his view on who was left at work.

7

If this matter is allowed into evidence, defendant would provide extensive testimony about how the selections were made and who was selected.   Defendant would produce a number of Caucasian witnesses who were in fact selected to go to Samoa and to other Hawaii airports.   The minimal probative value of Young's testimony to the issue of Gahr's termination, however, is substantially outweighed by considerations of waste of time.

Similarly, Young contends (at 134, not designated by plaintiff) that Caucasian employees were told they were being demoted and non-Caucasians that they were being promoted.   He provided only two names of such persons, "Rusty" (Russell Harlan) and Ann Werstler.   The basis for Young's perception is unclear.

In fact, the defendant's evidence on this issue would show that Young is simply mistaken about promotions.   There was some confusion about who was supposed to be a supervisor and who was supposed to be a screener.   This arose from the fact that the contractor that hired the first round of TSA employees, NCS Pearson, apparently gave out inaccurate information at the time of hiring.   After a couple of weeks, TSA asked all the screeners to bring in their appointment letters to show what position each employee was supposed to hold.   A few changes were made according to these letters.   TSA can call a number of Caucasian witnesses who occupied supervisory positions that Young claims were filled only by non-Caucasians.   Russell Harlan is one of these (Ann

8

Werstler no longer works for TSA, but she was never demoted either).  Given the slight probative value of the issue (since Gahr was not affected by the alleged demotions), and the questionable foundation for Young's knowledge, however, the court should exclude the evidence under Rule 403.

102:1-20

115:13-117:12

117:25-118:7

This is Tom Young's claim that other screeners complained to him that Patti Igarashi used the phrase "fucking haole."  Since it is offered for the truth of the matter asserted – that Igarashi said such things – it should be excluded as hearsay.

145:17-146:14

This concerns a conversation between Tom Young and Chris Gahr a year after Young was terminated, and has no conceivable relevance to this action.

COUNTER-DESIGNATIONS

20:17-21

21:18-22:6

34:5-9

35:5-16

```
63:7-11

66:4-19

67:13-22

68:9-69:21

98:9-16

100:8-101:2
```

III.  Patti Igarashi

Defendant notes that Collins lives in Hawaii and so can be subpoenaed.  Defendant will also probably call her to testify, so plaintiff may choose to forgo the reading of her deposition.  If plaintiff chooses to go ahead under Federal Rule of Evidence 801(d)(2) (admission by a party opponent), defendant objects to the following designations of testimony.[2]


OBJECTIONS

29:9-31:3

As made clear by a reference at 25:15 not designated by plaintiff, and the designated portion itself, this concerns policies at Igarashi's former employer, Aloha Airlines, regarding discriminatory remarks.  The testimony has no relevance to this

---

[2] If plaintiff chooses to have Igarashi's deposition read into the record, he should not be permitted to re-ask the same questions of her live.

matter against the federal government, and is potentially for
confusing the jury about the key issues.

    48:1-53:7

    54:11-25

    This concerns policies at another of Igarashi's former
employers, Aloha Airlines, regarding discriminatory remarks.
Again, the testimony has no relevance to this matter against the
federal government, and is potentially for confusing the jury
about the key issues.

    55:1-20

    This is a statement by counsel, not testimony.

    61:22-63:17

    This testimony concerns former Wackenhut and TSA screener
Kristi Joslin, and former TSA screener Bonnie Tanner.  The
testimony concerning Joslin's work performance at Wackenhut is
irrelevant.  The testimony about Joslin's work performance at TSA
is covered by defendant's Motion in Limine to Exclude Evidence
Regarding Personnel Decisions Other than Plaintiff's Termination.
The testimony regarding Tanner excerpted here appears
meaningless, but when combined with later testimony from Igarashi
about Tanner's work record, is also covered by that motion.

65:22

The reference to Pat Collins referring to "fucking Japs" is covered by defendant's motion in limine regarding Collins' statements.

71:6-74:2

This testimony concerns whether Igarashi wrote up employees for matters quite dissimilar to those that Gahr was terminated for.  This is covered by defendant's Motion in Limine to Exclude Evidence Regarding Personnel Decisions Other than Plaintiff's Termination.

76:6-88:4

This testimony concerns statements allegedly made by a married couple, Everett and JoAnne Reinhardt, and another screener Susan "Bowles" (actually Bos).  None of the three are on plaintiff's witness list.  According to the testimony, the Reinhardts and Bos called a hotline in Washington to complain about Igarashi being racist, which informed Igarashi's supervisor Leong, who spoke to Igarashi, who testified about it.  Since the testimony here is clearly intended to prove the truth of the matter asserted – that the Reinhardts and Bos complained about Igarashi – the testimony should be excluded as hearsay.  The

testimony is also objectionable because of plaintiff's counsel's repeated, badgering use of the phrase "fucking haole."

94:15-95:7

109:4-110:12

125:5-127:13

This testimony, concerning Tom Young's qualifications and termination, is covered by defendant's Motion in Limine to Exclude Evidence Regarding Personnel Decisions Other than Plaintiff's Termination. In addition, even if the court determines that evidence regarding Young's termination is admissible, Igarashi would not be competent to testify about the termination, because there is no evidence she played any role in it.

96:7-19

98:12-100:9

100:21-101:5

101:9-12

101:17-24

102:3-103:23

104:17-105:14

106:2-22

107:4-9

108:1-109:3

In each of these sections, plaintiff's counsel reads a portion of Tom Young's testimony and asks Igarashi to comment on a small portion of each quotation. In each case, the excerpt appears to be a thinly veiled excuse to reread Young's testimony (and to bolster by stressing that it was given under oath). For example, 98:12 through 100:7 is a lengthy excerpt from Young's deposition about a number of aspects of an alleged incident in which Young overheard remarks by Igarashi and Carvalho. Counsel's only question, however, concerns one of those aspects. Defendant does not object to counsel's questions that simply ask Igarashi about the incident without quoting Young's statement. The answers to these questions address the great majority of the relevant aspects of Young's allegations, so exclusion of Young's testimony (which will come in under Young's own deposition) does not cause unfair prejudice to plaintiff.

117:17-118:16

118:21-119:24

As with the excerpts of the Tom Young statement, addressed above, plaintiff's counsel here simply reads from Charles Turner's deposition and asks Igarashi questions about small portions of what he has just read. The excerpts should be excluded for the same reasons as set forth above.

14

120:22-24

As the contemporaneous objection notes, plaintiff's counsel is arguing with the witness about the phrase "fucking haole." The exchange should be excluded as argumentative.

123:6-125:4

Here, plaintiff's counsel questions Igarashi about a memorandum written by Filbert Carvalho to Lowrey Leong.  Since there was no foundation laid for any personal knowledge by Igarashi of the memorandum, her testimony about it should be excluded.

133:16-135:9

135:21-25

136:6-137:7

137:11-139:11

140:7-11

141:10-19

142:1-14

142:25-143:3

Plaintiff's counsel again reads excerpts from Tom Young's testimony and asks Igarashi to comment on portions of it.  This is improper for the reasons set forth above.  In addition, the exchange between counsel at 134-35 is not evidence.

15

150:9-169:8

172:16-179:4

178:12-183:12

This lengthy testimony concerns the disciplinary record of screener Bonnie Tanner (as is clear from the reference at 148:22). Plaintiff's counsel reads lengthy excerpts of a disciplinary letter to Tanner from Robert Au, and a number of other documents not authored or seen by Igarashi, concerning incidents in which she did not participate. The only exception is the document discussed at 159:23-160:20, which Igarashi wrote. All this testimony should be excluded under defendant's Motion in Limine to Exclude Evidence Regarding Personnel Decisions Other than Plaintiff's Termination, and all but the excerpt beginning at 159 should be excluded for lack of personal knowledge.


195:8-202:8

This is plaintiff's counsel's questioning of Igarashi about the grounds for Gahr's termination, and his comparison of the charges against Gahr to his version of the allegations against other employees who were not fired. Since Igarashi did not make the decision to terminate Gahr, and was personally aware of only one of the five serious complaints against him, there is no foundation for counsel's attempt to have Igarashi compare his highly selective and misleading versions of each of the five

incidents with the actions of other employees.  This should be saved for closing argument, to the extent plaintiff succeeds in getting these matters into evidence.

IV.  CHARLES TURNER

OBJECTIONS

33:7-15

This concerns hearsay statements by an unnamed TSA employee about Patti Igarashi's statements about supervisory assignments.

34:12-36:20

38:7-21

This again concerns hearsay from an unnamed employee that Patti Igarashi helped former Wackenhut employees with the screening test.  This should be excluded as hearsay, and as irrelevant, since there is no contention that Igarashi helped only non-Caucasian former Wackenhut employees.  Discrimination in favor of former co-workers is not actionable under Title VII, and testimony on this issue runs the risk of confusing the jury and crating unfair prejudice.

61:6-62:9

This concerns Patti Igarashi's treatment of Lucas Bruno. This is covered by defendant's Motion in Limine Regarding Personnel Decisions Other than Plaintiff's Termination.

73:4-17

74:14-75:15

This is Turner's hearsay account of events supposedly related to him by Caucasian screener Gary Leavitt and by a unnamed "local girl".

75:-16-76:18

This concerns Patti Igarashi's interaction with a screener named Glenn Archibald.  According to Turner, Igarashi and another (Caucasian) supervisor didn't like Archibald and yelled at him. Since there is no evidence the animosity was based on race, and no evidence of any personnel action against Archibald, the evidence is of no probative value.  This is also covered by defendant's Motion to Exclude Evidence Regarding Personnel Decisions Other than Plaintiff's Termination.

85:20-87:15

This concerns Turner's alleged reports to a hotline, and the alleged response that he got.  This is both hearsay and irrelevant.

101:11-103:9

This concerns Turner's claim that other employees told him that Patti Igarashi was soliciting statement against him.

18

Plaintiff never deposed any of the three or four employees named
by Turner who supposedly said this, nor do they have any evidence
from the women who actually accused Turner of sexual harassment
that their statements were solicited, coerced or in any way
inaccurate.  Accordingly, this testimony should be excluded as
hearsay.

129:20-22

Turner here states that TSA supervisors Bobby Au or Howard
Tagomori knew a supervisor at a job he held subsequent to TSA,
with the apparent implication that the supervisors had something
to do with his termination for sexual harassment from that job.
Because there is no personal knowledge foundation laid for the
testimony, it should be excluded.

COUNTER-DESIGNATIONS

31:1-13

106:1-18

106:25-107:13

108-5:23

117:2-7

120:6-122:22

130:1-25

131:24-133:4

133:24-136:6

137:5-138:23

145:21-25

V.    Patrick Collins

Defendant notes that Collins will be available to testify live, so plaintiff may choose to forgo the reading of his deposition.  If plaintiff chooses to go ahead under Federal Rule of Evidence 801(d)(2) (admission by a party opponent), defendant objects to the following designations of testimony.[3]


OBJECTIONS

13:17-14:17

This testimony concerns Collins' own experience with anti-Caucasian discrimination while he was a police officer on the mainland, and includes several potentially inflammatory words that Collins was called, including "cracker, white bread, fucking harp" (the latter for a person of Irish descent).  The testimony about the racial attitudes of people who Collins met in his police work has no relevance to any issue in this action.

---

[3] If plaintiff chooses to have Collins's deposition read into the record, he should not be permitted to re-ask the same questions of Collins live.

16:16-23

This testimony again concerns the racial attitudes of
others, not of Collins, and so is both irrelevant and hearsay.

17:4-18:6

This testimony concerns what others said (or didn't say)
about possible prejudice against Collins's Chinese-English
ancestry nephew.  It is irrelevant.

24:10-19

This testimony concerns questions put to Collins about his
testimony in another case, and plaintiff's counsel's strong
suggestion (denied by Collins) that the other case concerned
Patti Igarashi calling someone a fucking haole.  Since plaintiff
has no direct evidence of any such lawsuit other than the current
one, the inaccurate statement by plaintiff's counsel is not
evidence of any sort.

26:9-28:24

29:22-32:6

32:12-33:25

46:2-47:13

The argumentative questioning and inflammatory testimony
here is the subject of a motion in limine regarding Collins's use

21

in the distant past of abusive racial terms.  This is the subject
of a motion <u>in limine</u>.

    34:1-37:8

    This testimony is in response to plaintiff's counsel's
reading of an affidavit by Thomas Young about an incident that
Collins had no involvement in, and is clearly a way of getting
Young's affidavit (which is hearsay) in through the back door.

    40:20-41:13

    As in the previous section, plaintiff's counsel here
attempts to bait Collins with hearsay (from Charles Turner), this
time about Patti Igarashi's use of the term "fucking haole."

    50:20-24

    This testimony, in which Collins denies knowing of a TSA
employee missing part of an arm, is irrelevant.

    54:1-18

    This concerns Collins's lack of personal knowledge of the
reasons for the termination of TSA screener Eddie Kaupe.

61:10-63:8

In this testimony plaintiff's counsel asks Collins to compare his criticism of Gahr for leaving tables in the screening areas dirty (and thus posing a risk that one piece of luggage with traces of a prohibited item might contaminate other luggage) with Gahr's criticism of his supervisor Patti Igarashi (noted in Igarashi's counseling record) for leaving water bottles out at the checkpoint. Since Collins had no personal knowledge of Igarashi's record or the underlying incident, he lacked the personal knowledge necessary to comment on it.

64:14-65:12

This concerns Collins's expressed lack of knowledge about a shift swap between Patti Igarashi and Tom Young.

66:22-73:15

Plaintiff's counsel asks Collins to compare and comment on three documents, none of which was written by Collins, none of which concerns Chris Gahr and none of which is in evidence in this case, and to comment on them "based on his training as a police officer." Since Collins was never named as an expert witness, and the whole line of questioning appears to be a waste of time, the court should exclude the testimony.

23

76:15-78:24

This concerns information Collins received from another employee about why Patti Igarashi was fired, and about Igarashi's own statements about this lawsuit. The testimony should be excluded as hearsay.


COUNTER-DESIGNATIONS

None.


VI.  Filbert Carvalho

OBJECTIONS:

13:8-16

This concerns Carvalho's lack of knowledge about whether Patti Igarashi was counseled for calling people "fucking haoles". As the contemporaneous objection noted, the question lacked foundation as to how Carvalho would know if another employee was counseled.


68:2-70:5

This testimony concerns a memorandum written by Carvalho that refers to, among other things, a conversation between Carvalho and screener Russell "Rusty" Harlan, in which Harlan told Carvalho that other screeners were concerned about remarks Patti Igarashi made in a briefing that the screeners interpreted

as being biased in favor of former Wackenhut employees and against new TSA employees.  As is made clear starting at page 52, Carvalho had earlier briefed the screeners and asked them to bring concerns like this to him before calling Washington. Harlan also told Carvalho that Gahr was soliciting statements from screeners to forward to Washington.

This testimony is at least triple hearsay, concerning what unidentified screeners said to Harlan who then passed it along to Carvalho, who testifies about it here.  Moreover, since the subject of the supposed complaints was bias in favor of former Wackenhut employees, as opposed to racial discrimination, the testimony is irrelevant.


77:2-78:3

This testimony concerns triple hearsay:  that Lowery Leong told Carvalho that "some people called the ombudsman" to complain about Patti Igarashi.  The testimony should be excluded as hearsay and as irrelevant, since there is no indication what the complaints were about.


105:1-5

This is a question without an answer and an exchange between counsel.

110:7-9

This is a question without an answer.

126:12-128:1

This concerns a memorandum written by Pat Collins about screening manager Tom Young, who was terminated for (among other things) failing to show up to work.  Since Carvalho did not write the memo and was not present for the incident the memo documents, there is no foundation for the questioning.

130:19-131:9

134:8-139:4

137:11-21

138:10-16

These excerpts consist mainly of counsel's reading of an affidavit from Tom Young, and asking Carvalho to comment on very limited portions of it.  It is essentially an attempt to get the Young affidavit, which is clearly hearsay, into evidence.  The court should reject that attempt.

SUPPLEMENTAL DESIGNATION

131:13-18

DATED:  April 3, 2007, at Honolulu, Hawaii.

                                               EDWARD H. KUBO, JR.
                                               United States Attorney
                                               District of Hawaii

                                           /s/ Thomas A. Helper
                              By _____
                                       THOMAS A. HELPER
                                       Assistant U.S. Attorney

                                       Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

LUCAS BRUNO III, CHRISTOPHER )    CIVIL NO. 03-00567 JMS BMK
GAHR, FRANK ROBERT PAULSON,  )
CHARLES TURNER, and TOM      )    CERTIFICATE OF SERVICE
YOUNG,                       )
                             )
            Plaintiffs,      )
                             )
    vs.                      )
                             )
MICHAEL CHERTOFF, Secretary, )
DEPARTMENT OF HOMELAND       )
SECURITY,                    )
                             )
            Defendant.       )
_____)


CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that, on the date and by the method of

service noted below, a true and correct copy of the foregoing was

served on the following at their last known address:

        Served by First Class Mail:

        Moises A. Aviles                April 3, 2007
        Aviles & Associates
        560 N. Arrowhead Ave., Suite 2A
        San Bernardino, CA  92401

        Served Electronically through CM/ECF:

        G. Todd Withy                   April 3, 2007
        Withylawcourt@aol.com, withylaw@aol.com

            Attorneys for Plaintiff
            CHRISTOPHER GAHR

    DATED:  April 3, 2007, at Honolulu, Hawaii.


                        /s/ Coleen Tasaka-Shoda
                        _____