EDWARD H. KUBO, JR.   2499
United States Attorney
District of Hawaii

THOMAS A. HELPER   5676
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850-6100
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
E-mail: tom.helper@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHRISTOPHER GAHR[1], | ) | CIVIL NO. 03-00567 JMS BMK |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S PROFFER OF |
| | ) | EVIDENCE REGARDING PERSONNEL |
| vs. | ) | ACTIONS OTHER THAN PLAINTIFF'S |
| | ) | TERMINATION; CERTIFICATE OF |
| MICHAEL CHERTOFF, Secretary, | ) | SERVICE |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

DEFENDANT'S PROFFER OF EVIDENCE REGARDING PERSONNEL
ACTIONS OTHER THAN PLAINTIFF'S TERMINATION

INTRODUCTION

Defendant has moved this court in limine to bar plaintiff from introducing evidence of personnel actions other than the

---

[1] Because the court has now approved a stipulation dismissing the claims of all plaintiffs other than Christopher Gahr, defendant has amended the caption to reflect that the remainder of the case concerns only Gahr's claims.

EDWARD H. KUBO, JR.   2499
United States Attorney
District of Hawaii

THOMAS A. HELPER   5676
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850-6100
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
E-mail: tom.helper@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHRISTOPHER GAHR[1], | ) | CIVIL NO. 03-00567 JMS BMK |
| Plaintiff, | ) | DEFENDANT'S PROFFER OF EVIDENCE REGARDING PERSONNEL ACTIONS OTHER THAN PLAINTIFF'S TERMINATION; CERTIFICATE OF SERVICE |
| vs. | ) | |
| MICHAEL CHERTOFF, Secretary, DEPARTMENT OF HOMELAND SECURITY, | ) | |
| Defendants. | ) | |

DEFENDANT'S PROFFER OF EVIDENCE REGARDING PERSONNEL
ACTIONS OTHER THAN PLAINTIFF'S TERMINATION

INTRODUCTION

Defendant has moved this court *in limine* to bar plaintiff from introducing evidence of personnel actions other than the

---

[1] Because the court has now approved a stipulation dismissing the claims of all plaintiffs other than Christopher Gahr, defendant has amended the caption to reflect that the remainder of the case concerns only Gahr's claims.

decision to terminate plaintiff, or in the alternative to require plaintiff to proffer what evidence it would seek to introduce on such evidence, so that defendant and the court could determine the admissibility of the evidence.  Motion in Limine to Exclude Evidence Regarding Personnel Decisions Other than Plaintiff's Termination, filed January 23, 2007.  The court has now directed plaintiff to make a proffer along the lines of defendant's alternative request.  Order Requiring Written Proffer From Plaintiff as to Defendant's Motion In Limine to Exclude Evidence Regarding Personnel Decisions Other Than Plaintiff's Termination, filed April 13, 2007.  The court's order cites case law establishing that it would probably be error for the court to order a blanket exclusion of all evidence regarding other personnel decisions, as urged defendant urged in its motion as the first alternative.[2]

 Accordingly, defendant will present limited evidence regarding other personnel decisions in order to establish that

---

[2] In seeking to bar any and all evidence of other personnel actions, defendant relied primarily on dicta from Obrey v. Johnson, 400 F.3d 691 (9th Cir. 2005), suggesting that evidence regarding acts other than the one at issue in the case are usually "inadmissible in the typical case of individual discrimination."  Memorandum in Support of Motion at 2, citing Obrey, 400 F.3d at 698.  That dicta appears to conflict with the holdings of the cases cited by the court, Heyne v. Caruso, 69 F.3d 1475 (9th Cir. 1995) and Beachy v. Cascade Corp., 191 F.3d 1010 (9th Cir. 1999).  Those cases make clear that, contrary to the Obrey dicta relied on by defendant, evidence of other personnel actions clearly can be admissible in cases of individual discrimination.

plaintiff's termination was not racially motivated, and that there was not a general anti-Caucasian atmosphere at Kahului International Airport.[3]  To ensure that the plaintiff have the same opportunity to evaluate defendant's evidence that the court's order requires plaintiff to afford defendant, defendant sets forth its evidence herein.[4]

Defendant's proffered evidence shows that the decision-makers in plaintiff's termination routinely promoted Caucasians into supervisory positions, left adequately performing Caucasians in supervisory positions, and terminated poorly performing non-Caucasian supervisors.  The proffered evidence all will come from witnesses already on defendant's exhibit list (except for a possible records custodian), does not involve any new exhibits, and would take perhaps an hour of additional time on direct

---

[3]  As defendant asserted in its trial brief (at 20-21):

> Ultimately, the emphasis on other personnel decisions will help, not hurt, defendant's case.  The more personnel decisions are at issue, the more defendant will show that Caucasians and non-Caucasians alike were treated without regard to race.

[4]  Because plaintiff has not moved in limine to restrict defendant's ability to introduce evidence regarding other personnel actions, the court's order does not require defendant to make a proffer.  Defendant could have held the evidence as rebuttal to argument that plaintiff will apparently offer to the effect that his termination was part of a broad campaign to rid Kahului of Caucasians.  Instead of reserving the evidence for rebuttal, however, defendant makes its proffer to ensure that there is a level playing field.

examination to place before the jury. Defendant long ago disclosed underlying documentation on each of the personnel decisions referred to in this proffer.

The court's Order requires a proffer

> as to each witness that would testify as to the treatment of anyone other than the plaintiff, and explain the relationship between that action and the alleged discrimination against plaintiff. The proffer should include, but is not limited to, the race of the witness, the time of the alleged discriminatory act or acts against the witness, and the person who discriminated against the witness. If plaintiff seeks to introduce testimony tending to show more favorable treatment towards non-Caucasians, similar information must be provided. Further, like explanations should be provided for any exhibits plaintiff seeks to introduce in an effort to prove discrimination against, or favorable treatment towards, others.

Order at 2. Based on this order, defendant makes the following proffer.

## PROFFER

Defendant's proffer sets forth personnel decisions that meet the following parameters: (1) they involved decision-makers who were also involved with plaintiff's termination; (2) with one exception described below involving Jeffrey Perreira, they involved supervisory positions (lead screener, supervisory screener, or screening manager), as opposed to line screeners; and (3) they occurred before the end of 2004, a little more than two years after plaintiff's termination.

Defendant has already provided all documentation regarding the termination decisions to plaintiff. The information about the promotion decisions was available to plaintiffs in the form of rosters setting forth the identity of defendant's supervisors. Plaintiff did not seek the underlying documentation (job applications, resumes, and other materials) on these decisions in the course of discovery. Defendant's proffer does not involve any new witnesses, except perhaps a records custodian, or new exhibits, except as may be necessary to refresh recollection.

The relevance of each of the proffered personnel actions is that each decision undercuts plaintiff's assertion that management at TSA Kahului – and specifically decision-makers Leong, Tagamori, Collins, Igarashi and Carvalho – was biased against Caucasians. If there was such a bias, those managers would not have retained Caucasian managers hired by the contractor NCS Pearson prior to the October 6, 2002 roll-out, promoted Caucasian screeners into management positions after the roll-out, promoted Caucasian managers into more senior management positions, and terminated non-Caucasian screeners and supervisors.

Based on the above, defendant will proffer evidence regarding the following personnel decisions:

1. The October 6, 2006 decision to hire Caucasian Patrick

Collins as a screening manager, by Lowrey Leong, with the endorsement of Patti Igarashi.

    2.  The November 2002 decision to hire Caucasian Earl Owens Caucasian, as a screening manager, by Lowrey Leong.  Leong based his decision in substantial part on the fact that Patti Igarashi, Patrick Collins and Filbert Carvalho recommended Owens.

    3.  The April 4, 2004 decision to elevate Caucasian Angela Williams from her position as a Screening Supervisor to the position of Aviation Security Inspector (ASI), a job which provided considerably better pay, hours, working conditions and opportunity for advancement.  Williams was interviewed and recommended by Howard Tagamori.  The final decision to hire her was made by Lowery Leong.  Non-Caucasians applied for the job.

    4.  The May 30, 2004 decision to elevate Caucasian Russell Harlan from his position as a Screening Supervisor to the position of ASI, a job which provided considerably better pay, hours, working conditions and opportunity for advancement. Harlan was interviewed and recommended by Howard Tagamori.  The final decision to hire him was made by Lowery Leong.  Non-Caucasians applied for the job.

    4.  The fact that the following Caucasians were employed as lead screeners, screening supervisors or screening manager from 2002 through the end of 2004 without having been terminated. Some of these Caucasians were promoted from screener to lead, or

from lead to supervisor, during this time period.  All promotion decisions were approved by Lowery Leong, many with the recommendation of screening managers Collins or Igarashi.  For each promotion, non-Caucasians were eligible for the position:

   (1) Debora Ames
   (2) Patrick Collins
   (3) Dale Demertrepolous
   (4) Nicholas Giaconi (a lead screener who was promoted to screening supervisor on September 11, 2004).
   (5) Anita Gray (promoted from screener to lead screener on June 13, 2004).
   (6) Theresa Greenisen (promoted from screener to lead screener on October 19, 2003).
   (7) Russell Harlan (promoted to ASI in May 2004 as noted above).
   (8) Robert Karlen (promoted from screener to lead screener on October 31, 2004).
   (9) Joan Kostera (promoted from screener to lead screener on June 13, 2004).
   (10) Amanda Lagoy
   (11) Joe Ann Reinhardt (promoted from screener to lead screener on October 19, 2003)
   (12) Gary Leavitt (promoted from lead screener to supervisor on December 26, 2004
   (13) Angela Williams (promoted to ASI as set forth above).

   5. The termination of non-Caucasian lead screener Mary Carvalho on November 12, 2002 for failing to respond to counseling about her personal appearance and talking in a threatening manner to and about other employees.  The decision was proposed by Howard Tagamori and approved by Lowery Leong.

   6. The termination of non-Caucasian screener Jeffrey Perreira (Pacific Islander) on November 1, 2002 for mishandling passengers, damaging an x-ray machine and damaging an ETD machine.  The decision was proposed by Howard Tagamori and

approved by Lowery Leong.  Perreira is the only non-supervisory personnel decision included in this proffer.  The relevance of his termination is that one of the reasons for his termination is the same as one of the reasons for plaintiff's termination: failure to take care of sensitive and expensive screening equipment.  The time frame is also virtually the same as plaintiff's termination.

    7.  The September 30, 2003 termination of non-Caucasian screening manager Patti Igarashi for conducting an unauthorized search for law enforcement purposes of a passenger who had already boarded a plane.  Lowery Leong approved the termination.

    DATED:  April 16, 2007, at Honolulu, Hawaii.

                              EDWARD H. KUBO, JR.
                              United States Attorney
                              District of Hawaii

                                  /s/ Thomas A. Helper
                       By_____
                            THOMAS A. HELPER
                            Assistant U.S. Attorney

                            Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHRISTOPHER GAHR[1], | ) | CIVIL NO. 03-00567 JMS BMK |
| | ) | |
| Plaintiff, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL CHERTOFF, Secretary, DEPARTMENT OF HOMELAND SECURITY, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known address:

Served by First Class Mail:

Moises A. Aviles                                April 16, 2007
Aviles & Associates
560 N. Arrowhead Ave., Suite 2A
San Bernardino, CA  92401

Served Electronically through CM/ECF:

G. Todd Withy                                   April 16, 2007
Withylawcourt@aol.com, withylaw@aol.com

Attorneys for Plaintiff
CHRISTOPHER GAHR

DATED: April 16, 2007, at Honolulu, Hawaii.

/s/ Coleen Tasaka-Shoda
_____